IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| JANICE DUNN | § | |
| | § | |
| v. | § | NO. 4:25-CV-00093-SDJ-BD |
| | § | |
| PLANO HOUSING AUTHORITY, *et al.* | § | |
| | § | |

**MEMORDANDUM OPINION AND ORDER**

Late last year, the court explained in an order that pro se plaintiff Janice Dunn had violated multiple court orders and stated that, "[t]o secure Dunn's compliance with the court's orders, it appears necessary to impose sanctions against her." Dkt. 145 at 2. It ordered Dunn to "appear at a hearing to show cause why she should not be sanctioned." *Id.* (boldface removed). This sanctions order follows that hearing.

**BACKGROUND**

The same day Dunn filed her original complaint in this case, and before the court had taken any action on it, Dunn filed a motion to transfer the case from the venue she had chosen to another, unspecified venue, asserting that this court would be biased against her. Dkt. 4. Over the next eight months, Dunn filed 110 documents. Those documents often came in batches—as many as 21 in a single day. *See, e.g.*, Dkts. 102–122. Several of them included second-person narration that suggested they were created en mass by generative artificial intelligence ("AI"). *E.g.*, Dkts. 3, 44, 98; *see* Joshua D. Blank & Leigh Osofsky, *Automated Legal Guidance*, 106 Cornell L. Rev. 179, 218–19 (2020) (explaining that legal guidance output from AI generally uses second-person pronouns).

Many of Dunn's filings were duplicative, premature, or sought relief that the court had already denied. For instance, Dunn moved for entry of a default judgment against defendant Dave Young—who, by that point, had appeared. Dkt. 64. The court denied that motion. Dkt. 73. Then she moved for entry of a default judgment against Young again, Dkt. 90, and then a third time, Dkt. 103. In another instance, Dunn moved five times in a single day for clarification of the

employment status of one of the defendants. Dkts. 105, 106, 109, 110, 117. And after the court told her that discovery was premature, Dkt. 33 at 2, Dunn filed seven more discovery-related motions, Dkts. 77, 78, 87, 89, 108, 126, 127, and sent at least 31 discovery requests to the defendants, Dkt. 70.

Dunn also sent letters to several members of the court's staff and to executive-branch officials. Dkts. 58–60. She began sending "courtesy copies" of many of her filings to the United States Court of Appeals for the Fifth Circuit. *E.g.*, Dkts. 74-1, 75-1, 77-4, 78-2, 79-2.

Some of what Dunn filed was personal, accusing several deputy clerks, by name, of colluding with Young to prevent her from filing a motion for a default judgment. Dkt. 98; *see* Dkts. 64–66, 69. According to Dunn, she spoke on the phone to a deputy clerk about filing her motion shortly before Young moved to dismiss. Dkt. 64 at 1. From that, she concluded that the clerks "tipp[ed] off" Young that she planned to file a motion for a default judgment. Dkt. 98.

By October 2025, the quantity of Dunn's frivolous filings had impaired the court's ability to complete its work, and two motions to dismiss were pending that appeared likely to at least narrow the scope of issues in the case. The court entered a stay of new filings pending resolution of those motions, stating in its order: "The parties may file any response, reply, or sur-reply to the pending motions permitted by the court's local rules and the federal rules of civil procedure. The parties must not file any other document unless and until the stay is lifted by subsequent court order." Dkt. 137. Over the next two months, Dunn violated that order three times, filing documents notwithstanding the court's clear language. Dkt. 139; Docket Entry for Nov. 24, 2025.

A week after the court entered that order, it discovered that Dunn had emailed members of its staff 193 times. *See* Dkt. 140. Since then, the court has learned of more email messages that Dunn sent to another member of its staff during that period, raising the total to 204 messages. *See* App'x. Like her filings, those messages were often vexatious. For example, on May 23, 2025, Dunn emailed a member of the clerk's office to say that she had mailed a motion to the court, then sent an almost identical email message to the same person three minutes later. App'x at 290. On July 7, 2025, she sent an email message to 51 recipients regarding her 31st premature discovery request. *Id.* at 826. On October 12, 2025, she emailed a list of 12 grievances to several members of the

court's staff, asserting that the deputy and assistant deputy clerks in charge of this division and two deputy clerks had engaged in "ongoing obstruction, misrepresentation, and denial of access" and "repeated[ly] interfere[d] with [her] ability to access filings, respond to motions, and exercise [her] rights as a pro se litigant and ADA-protected citizen." *Id.* at 651–52. Dunn's accusations include claims that those clerks lied to her, blocked her access to the electronic-filing system, and colluded with the defendants. *Id.*

The court ordered Dunn to "refrain from contacting court staff unnecessarily or through inappropriate means," advising that, "[i]f it is necessary to contact the clerk's office, the parties may do so by calling (214) 872-4800," the phone number of the clerk's office in Plano. Dkt. 138. Dunn did not comply with that order. She unnecessarily emailed court staff nine more times. So the court entered a second, more specific order that she "not email members of court staff individually." Dkt. 140 at 1. That order again advised that "violation of this or any other court order may lead to sanctions or an order dismissing the case." *Id.* at 2.

Three weeks later, Dunn filed a petition for a writ of mandamus in the Fifth Circuit (her third such petition, *see* Dkts. 21, 54, along with her two interlocutory appeals, Dkts. 125, 135) that, among other things, challenged the stay but did not request specific relief related to it. *In re Dunn*, No. 25-40735 (5th Cir. Nov. 7, 2025), Dkt. 2 at 2, 4–5. The Fifth Circuit dismissed the petition for want of prosecution because Dunn failed to timely pay the filing fee. *Id.*, Dkt. 6; Dkt. 143.

After the court entered its order that Dunn not contact members of its staff individually, she violated it at least 20 times by emailing the court's staff and also violated the order prohibiting new filings. Dkt. 141. The court recounted Dunn's violations of its orders and ordered her to appear at a hearing to show cause why she should not be sanctioned. Dkt. 145. Before the hearing happened, Dunn sent one more email message that violated the court's orders.

The show-cause order described the basis for potential sanctions, informed Dunn that the hearing was her opportunity to show cause why she should not be sanctioned, and permitted her to file a written brief. Dkt. 145 at 2. Dunn chose not to file a brief. But through the court's access coordinator, she requested that the hearing be conducted via Zoom. The court granted that

request. Dkt. 146. Dunn then moved to cancel the hearing. Dkt. 148. The court denied that motion but permitted Dunn to appear in person, via Zoom, or via telephone. Dkt. 149. Dunn appeared telephonically, and the defendants' counsel appeared via Zoom. Minute Entry for Jan. 5, 2026.

At the hearing, the court advised Dunn that she could testify to present relevant facts beyond what the court's records already reflected but warned her twice that, if she chose to testify, she would be subject to cross-examination by the defendants' counsel. Dkt. 151 at 6–7. Dunn chose to testify. She stated that she violated the court's orders because she was "blocked" from the docket and then "unblocked"—and that, when she was unblocked, she "was assuming [she] was unblocked from everything." *Id.* at 10. But she stated that she could not recall emailing the court's staff more than 100 times and "did not mean any harm at all." *Id.* at 10, 13.

When Dunn completed her testimony, the court allowed for cross-examination. *Id.* at 10. The defendants' counsel was able to ask just one question: "Ms. Dunn, what is your educational background?" *Id.* at 10–11. Dunn refused to answer, telling the court: "I feel like I'm being harassed now . . . . I don't even understand why [defense counsel] is questioning me when you are the one that said I e-mailed. . . . I wasn't expecting to talk to anybody but the judge." *Id.* at 11. The court instructed Dunn to answer the question; she refused. *Id.* at 11–12.

The court then invited Dunn to present argument as to why she should not be sanctioned, why the court lacks the power to impose a sanction, and why the court should impose a lesser sanction than dismissal or a monetary fine and what sanction the court should impose. *Id.* at 13–14. Dunn argued that her rights under the Americans with Disabilities Act ("ADA") prevent the court from imposing sanctions. *Id.* at 13–14. She did not propose a specific lesser sanction but urged the court not to dismiss her case. *Id.* at 15.

## LAW

A court may sanction a party or her counsel based on rules, its inherent power, or both. *Chambers v. NASCO, Inc.*, 501 U.S. 32, 47–50 (1991). The court's inherent power is to "vindicate its own interests." *Ben E. Keith Co. v. Dining All., Inc.*, 80 F.4th 695, 701 (5th Cir. 2023). Those

interests include maintaining the efficiency and integrity of the justice system, *Chambers*, 501 U.S. at 44, the ethical standards that govern attorneys, *In re Deepwater Horizon*, 824 F.3d 571, 577 (5th Cir. 2016), and "obedience to court orders," *Nat. Gas Pipeline Co. of Am. v. Energy Gathering, Inc.*, 86 F.3d 464, 467 (5th Cir. 1996).

That said, inherent power to sanction should be exercised "with great restraint and caution." *Id.* The court should impose only those sanctions that are "reasonable and appropriate" to "achieve the orderly and expeditious disposition" of the court's docket. *Id.*

Imposition of sanctions under that authority requires two things: due process for the sanctioned party and a specific finding of bad faith. *Sandifer v. Gusman*, 637 F. App'x 117, 121 (5th Cir. 2015). "Bad faith" can exist when a party violates court orders. *Id.* at 122.

Although the court has significant leeway in crafting a sanction, it must aim to deter misconduct and impose the least severe measure that will adequately deter the sanctioned conduct. *See Jenkins v. Methodist Hosps. of Dall., Inc.*, 478 F.3d 255, 265 (5th Cir. 2007) (discussing sanctions under Rule 11). "[A]n admonition by the court may be an appropriate sanction, in instances where the [person]'s sanctionable conduct was not intentional or malicious, where it constituted a first offense, and where the [person] had already recognized and apologized for his [or her] actions." *Id.*

## DISCUSSION

The court has been patient with Dunn. It has given her multiple chances and multiple warnings that she risked sanctions if she violated court orders. She did not heed those warnings. Even after the court ordered her to show cause why she should not be sanctioned for failure to comply with its orders, she continued to violate court orders. Dunn's defiance of the court continued into the show-cause hearing itself. After the court advised her twice that, if she chose to testify, she would be subject to cross-examination, Dunn chose to testify, then refused to submit to cross-examination.

5

At the hearing, Dunn advanced several arguments why she should not be sanctioned. For one, she denied that she had sent an unreasonable number of email messages to court staff, maintaining that she could recall fewer than 100. The appendix to this order, which contains 234 email messages spanning 835 pages, belies that argument. Thirty of the messages were sent after the court ordered Dunn to refrain from contacting court staff unnecessarily, 21 were sent after the court ordered her not to email members of its staff individually, and one was sent after the court ordered her to show cause why she should not be sanctioned. Dunn's denial of that behavior was false. Far from absolving her, it stands as another reason to sanction her.

Second, Dunn argued that she was "blocked" from the docket and then "unblocked" and that she assumed that meant she was "unblocked from everything." That argument appears to reference her claim that, for some period, she did not receive notices of electronic filing through the court's e-filing system. *See* Docket Entries for Dec. 8, 2025, Dec. 19, 2025. Dunn does not explain why she would construe receiving notices of electronic filing to mean that the court's orders no longer apply to her or why the court should view that as justifying her recalcitrance.

Finally, Dunn argued that the ADA bars the court from imposing a sanction. She did not explain what provision of the ADA she was relying on. Nor could she. Although it has for decades been the policy of the federal courts to provide reasonable accommodations, *Motto v. City of Union City*, 177 F.R.D. 308, 309 (D.N.J. 1998), "the ADA does not apply to federal courts," *Moses v. Sylvia*, No. 3:25-cv-00346, 2025 WL 3078709, at *2 (S.D. Tex. Nov. 4, 2025) (quoting *Roman v. Jefferson at Hollywood LP*, 495 F. App'x 804, 806 (9th Cir. 2012)), *report and recommendation adopted,* 2025 WL 3297113 (S.D. Tex. Nov. 26, 2025).

The court has accommodated Dunn at every turn. When she asked that the show-cause hearing be conducted via Zoom, it granted her request. Dkt. 146. When she changed her mind and asserted that a Zoom hearing would prove a barrier to her participation, the court permitted her to choose whether to appear in person, via Zoom, or via telephone. Dkt. 149. And the court's access coordinator has been consistently available to make any needed accommodations. But accommodations are not without limit. *See Moses*, 2025 WL 3078709, at *2–3; Dkt. 149 at 1

(explaining that, "[a]s a plaintiff seeking relief in federal court, Dunn must be able to communicate with the court and opposing counsel through some means").

Individually, many of Dunn's email messages appear innocuous. But "[t]his was not a situation where a litigant slipped up just once, or twice, or even thrice." *Mohammed v. Anderson*, No. 1:18-cv-08393, 2019 WL 3943669, at *5 (N.D. Ill. Aug. 21, 2019), *aff'd,* 833 F. App'x 651 (7th Cir. 2020). "As is often the case in life, . . . the whole of abusive action is greater than the sum of [its] parts." *Fuery v. City of Chicago*, 900 F.3d 450, 454 (7th Cir. 2018). Were the court "to view judicial abuses piecemeal, each one might not be worthy of sanctions, or even comment. But these incremental abuses chip away at the fair administration of justice." *Id.*

The court is aware of 34 instances of Dunn violating its orders. That is more than enough to justify sanctions. *Sandifer*, 637 F. App'x at 122. The fact that those 34 instances come after repeated warnings practically compels a sanction order. *See Kendricks v. DOJ*, No. 6:23-cv-00701-XR, 2024 WL 788910, at *4 (W.D. Tex. Feb. 26, 2024) (observing that the "Plaintiff's refusal to abide by the Court's warnings to cease sending emails to Court personnel" demonstrated that lesser sanctions would be futile). Other courts have found that sanctions are appropriate based on similar conduct. *See Wells v. Gourmet Servs. Inc.*, 748 F. App'x 235, 241 (11th Cir. 2018) (affirming a sanctions order); *Maus v. Ennis*, 513 F. App'x 872, 879 (11th Cir. 2013) (same); *Nickerson v. United States*, 394 F. App'x 494, 496–97 (10th Cir. 2010) (same); *Petito v. Brewster*, 562 F.3d 761, 762–63 (5th Cir. 2009) (same); *Montes v. Tibbs*, No. 4:23-cv-01352, 2024 WL 1676254, at *5 (S.D. Tex. Apr. 18, 2024) (warning of sanctions); *Kendricks*, 2024 WL 788910, at *3–5 (imposing sanctions); *Edmond v. Dall. FBI*, No. 3:22-cv-2487-B, 2022 WL 17834540, at *2 (N.D. Tex. Dec. 21, 2022) (warning of sanctions); *Eustice v. Louisiana*, No. 3:18-cv-01008-SDD-RLB, 2020 WL 3520298, at *9 (M.D. La. June 29, 2020) (recommending sanctions), *report and recommendation adopted,* 2020 WL 3966320 (M.D. La. July 13, 2020) (imposing sanctions); *Mohammed*, 2019 WL 3943669, at *5 (same).

That said, the court must exercise "great restraint," *Nat. Gas Pipeline Co.*, 86 F.3d at 467, and impose "the least restrictive sanction necessary to deter the inappropriate behavior," *Sandifer*, 637

7

F. App'x at 122 (quoting *In re First City Bancorporation of Tex. Inc.*, 282 F.3d 864, 867 (5th Cir. 2002)). In some cases, admonishment alone is the appropriate sanction, even though the court would be justified in imposing a monetary sanction or dismissal of the case. *See Wallace v. Cockrell*, No. 3:02-cv-1807-M, 2003 WL 21418639, at *5 (N.D. Tex. Mar. 10, 2003) (Ramirez, J.), *report and recommendation adopted as supplemented,* 2003 WL 21447831 (N.D. Tex. Mar. 27, 2003); *Collie v. Kendall*, No. 3:98-cv-1678-G, 1999 WL 462327, at *5 (N.D. Tex. July 6, 1999).

Here, it has been more than four months since the show-cause hearing, and Dunn has not violated a court order during that time. That is a notable departure from her past conduct. Having to participate in a show-cause hearing, as all litigants must be prepared to do if ordered by a court, appears to have caused Dunn to discontinue her violative conduct.

Exercising great restraint, the court concludes that an admonishment will suffice at this stage to deter future violations of the court's orders. The court hastens to add, however, that Dunn has been given multiple warnings and opportunities to avoid harsher sanctions. It is only her compliance since the show-cause hearing that leads the court to conclude that a monetary sanction or dismissal is unwarranted, and the situation presents a close call. In other words, Dunn has only narrowly avoided more severe sanctions. She is on notice that, if she violates a court order again, she can and should expect an order dismissing her case, requiring her to pay a monetary penalty, or both. *See Maus*, 513 F. App'x at 879 (finding that a default judgment was an appropriate sanction because the defendant "had already been admonished for his misconduct, and the court repeatedly warned him that further misconduct could result in sanctions"); *Lamar Fin. Corp. v. Adams*, 918 F.2d 564, 567 (5th Cir. 1990) (affirming a $500-per-day sanction); *Kendricks*, 2024 WL 788910, at *4 (noting that "refusal to abide by the Court's warnings" demonstrates that lesser sanctions would be futile and warrants dismissal); *Luevano v. Clinton*, No. 5:15-cv-00142-DAE, 2015 WL 3408123, at *10–11 (W.D. Tex. May 27, 2015) (imposing a $400-per-violation sanction); *Collie*, 1999 WL 462327, at *5 (noting that "previous sanctions did not discourage the [offending parties]," so "admonishment or reprimand would be futile"); *Trahan v. Long Beach Mortg. Co.*,

No. 9:05-cv-29-TH-KFG, 2007 WL 9724358, at *2 (E.D. Tex. Oct. 10, 2007) (imposing a $500-per-day sanction).

Finally, the court reminds Dunn that, to the extent she relies on AI to locate legal authorities and prepare documents for filing with the court, she does so at her peril. This court's rules provide warnings and guidance about the use of AI. Loc. R. AT-3(m), CV-11(g). All attorneys and pro se litigants who file documents here are bound by those rules and Federal Rule of Civil Procedure 11. Failure to abide by any applicable rule, including the rules just mentioned, would be an independent basis for imposition of the more severe sanctions that this order describes but declines, at this stage, to impose.

## CONCLUSION

Dunn is **SANCTIONED** by way of an admonishment that her multiple violations of court orders constitute sanctionable conduct.

It is **ORDERED** that Dunn not commit any further violation of a court order or rule. If she does, she will be subject to additional sanctions, which may include dismissal of her case, an order to pay monetary penalties, or both.

Notwithstanding the stay on new filings, Dkt. 137, within 14 days after service of this order, any party may serve and file written objections to this order in accordance with Federal Rule of Civil Procedure 72(a).

So **ORDERED** and **SIGNED** this 21st day of May, 2026.

_____
Bill Davis
United States Magistrate Judge

9